**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MICHAEL BURNA and MICHAEL RINALDI, on Behalf of Themselves and on Behalf of All Others Similarly Situated,** | § | |
| | § | |
| ***Plaintiffs*****,** | § | **CASE NO. 3:26-cv-01394** |
| | § | |
| **v.** | § | |
| | § | |
| **UNITED PARCEL SERVICE, INC.,** | § | |
| | § | |
| ***Defendant.*** | § | |

**PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs Michael Burna and Michael Rinaldi ("Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated ("Class Members"), file this Class Action Complaint and Jury Demand ("Complaint") against United Parcel Service, Inc. ("Defendant" or "UPS").

**INTRODUCTION**

1. UPS implemented an illegal policy requiring its hourly, non-exempt employees, including Plaintiffs and the Class Members, to undergo mandatory security screenings each shift without pay. These mandatory screenings constitute compensable time worked by Plaintiffs and the Class Members, and by failing to pay them for such time worked, UPS violated Connecticut law by failing to pay for all "hours worked."

2. Employers in Connecticut must pay "all wages, salary or other compensation due each employee on a regular payday..." C.G.S. Sec. 31-71b. Under Connecticut law, "hours worked" includes all time that employees are "required by the employer to be on the employer's premises…" C.G.S. § 31-76b(2)(A); Conn. Agencies Regs., § 31-60-11. Importantly, the term "hours worked" includes the time an employer requires its employees to spend undergoing

mandatory security screenings on the employer's premises and such time is compensable. *Del Rio v. Amazon.com Servs*., 354 Conn. 151, 349 A.3d 570, 585 (2026).

3. UPS's conduct violates Connecticut law because UPS failed to pay Plaintiffs and the Class Members overtime wages for all hours worked over 40 hours in a week, as required by Connecticut law. C.G.S. § 31-68 (providing a cause of action for unpaid overtime wages if "any employee is paid by his or her employer less than the…overtime wage to which he or she is entitled.").

4. UPS's conduct also violates Connecticut law because UPS failed to pay Plaintiffs and the Class Members for all straight time hours worked in a week, as required by Connecticut law. C.G.S. § 31-72; 31-71b, et seq., Conn. Agencies Regs. § 31-60-11.

5. Additionally, UPS was unjustly enriched under the common law of Connecticut because UPS failed to pay Plaintiffs and the Class Members for all hours worked in those weeks when they worked less than 40 hours.

6. Consequently, Plaintiffs bring this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages, penalties, and attorneys' fees and costs due to Plaintiffs and all similarly situated employees.

## PARTIES

### A. Plaintiffs

7. Plaintiff Michael Burna is an individual who worked for UPS as an hourly, non-exempt employee in Norwalk, Connecticut. He is a resident of Connecticut.

8. Plaintiff Michael Rinaldi is an individual who worked for UPS as an hourly, non-exempt employee in Hartford, Connecticut. He is a resident of Connecticut.

**B. Defendant**

9. Defendant United Parcel Service, Inc. is a foreign corporation organized under the laws of Ohio with its principal place of business in Atlanta, Georgia. Defendant can be served with process by serving its registered agent, Corporation Service Company, at Goodwin Square, 225 Asylum Street, 20th Floor, Hartford, CT 06103.

**C. Class Members**

10. The "Statutory Class Members" are all current and former hourly paid employees of UPS who underwent a security screening during at least one week in Connecticut in the two-year period before the filing of the Complaint until final resolution of this action.

11. The "Common Law Class Members" are all current and former hourly paid employees of UPS who underwent a security screening and worked less than 40 hours in at least one week in Connecticut in the six-year period prior to the filing of the Complaint until final resolution of this action.

12. The Statutory Class Members and the Common Law Class Members are collectively referred to as the "Class Members."

**<u>JURISDICTION AND VENUE</u>**

13. This Court has personal jurisdiction over UPS because UPS has purposefully availed itself of the privileges of conducting activities in Connecticut and established minimum contacts sufficient to confer jurisdiction. Specifically, UPS does business in Connecticut, maintains offices in Connecticut, advertises in Connecticut, markets to Connecticut consumers, and employs Connecticut residents. Thus, the assumption of jurisdiction over UPS will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional

requirements of due process. Further, the violations of law forming the basis of this action also occurred in Connecticut.

14. This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this Court has original jurisdiction over Plaintiffs' Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiffs and UPS are citizens of different states – specifically, both Plaintiffs are citizens of Connecticut and UPS is a citizen of Ohio, where it was incorporated, and Georgia where it maintains its principal place of business. Moreover, the number of proposed Class Members in Connecticut is believed to exceed 100 individuals.

15. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district, including many of the alleged wrongs. Plaintiffs worked in this district, were denied wages in this district, and UPS operates several facilities in Connecticut.

**COVERAGE UNDER CONNECTICUT WAGE AND HOUR LAW**

16. Employers in Connecticut must pay "all wages, salary or other compensation due each employee on a regular payday...". C.G.S. § 31-71b.

17. "Employer" under our Minimum Wage Act "means any owner or any person, partnership, corporation, limited liability company or association of persons acting directly as, or on behalf of, or in the interest of an employer in relation to employees, including the state and any political subdivision thereof." C.G.S. § 31-58(d).

18. "Hours worked" includes all time that employees are "required by the employer to be on the employer's premises." C.G.S. § 31-76b(2)(A); Conn. Agencies Regs., § 31-60-11; *Del Rio v. Amazon.com Servs.*, 354 Conn. 151, 349 A.3d 570, 585 (2026).

19. "Hours worked" includes the time spent completing mandatory security screenings on an employer's premises and such time is compensable. *Del Rio v. Amazon.com Servs.*, 354 Conn. 151, 349 A.3d 570, 585 (2026).

20. At all material times, UPS has been governed by and subject to Connecticut law.

21. At all material times, UPS has been an employer within the meaning of Connecticut law. *See* C.G.S. § 31-58(d).

22. At all material times, Plaintiffs and the Class Members have been employees of UPS under Connecticut law.

23. At all material times, UPS was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiffs and the Class Members.

## FACTUAL BACKGROUND

### A. Plaintiffs' Employment with UPS

24. UPS is a company specializing in shipping and receiving items for businesses and individuals. UPS is the largest courier company in the world by revenue.

25. To provide these services, UPS operates package handling facilities in Connecticut, including facilities it refers to as hubs and distribution centers. The facilities are high-volume centers at which packages are sorted and assigned for delivery.

26. At each of these facilities, UPS employs hundreds of hourly paid workers.

27. Plaintiff Burna worked as an hourly, non-exempt employee for UPS. He worked as a warehouse worker at the UPS facility in Norwalk, Connecticut. His job duties included sorting and moving packages to be delivered to customers. He worked for UPS from approximately June 2023 to January 2024. He was paid an hourly rate of approximately $21.50. He generally worked

five days per week. His schedule varied but during the holiday seasons his schedule was normally from 1 am to 9 am. When adding the unpaid work described in this Complaint, he worked more than 40 hours in one or more weeks. Plaintiff Burna worked with hundreds of other employees of UPS.

28. Plaintiff Rinaldi worked as an hourly, non-exempt employee for UPS. He worked as both a driver and as a warehouse worker at the UPS facility in Hartford, Connecticut. His job duties included delivering packages as a driver, and sorting packages, unloading packages, and moving packages to be delivered to customers as a warehouse worker. He worked for UPS from approximately 2006 to July 2025. He was paid an hourly rate of approximately $44.00. He generally worked five days per week from Monday through Friday. He was normally scheduled to work from 5:30 pm to 2:30 am. When adding the unpaid work described in this Complaint, he worked more than 40 hours in one or more weeks. Plaintiff Rinaldi worked with hundreds of other employees of UPS.

**B. Plaintiffs and the Class Members were not paid for all "Hours Worked" as a result of completing mandatory security screenings off the clock.**

29. As hourly, non-exempt employees, Plaintiffs and the Class Members were required to clock-in and clock-out each day.

30. Unfortunately, UPS maintained a policy and practice of failing to pay its employees, including Plaintiffs and the Class Members, for all hours worked. That is because UPS required its hourly paid employees to complete security screenings off the clock and without pay.

31. UPS required its employees to arrive at UPS warehouses prior to the start of their scheduled shifts. However, when employees arrived before the start of their scheduled shifts, they were not allowed to clock-in for the day. UPS required employees to undergo a mandatory security screening prior to clocking in each day.

32. Although the security screening was required by UPS, UPS did not pay any employee, including Plaintiffs and the Class Members, for the time spent undergoing the security screening. As a result, UPS did not pay Plaintiffs and the Class Members for all "time worked."

33. In particular, prior to the start of their scheduled shifts, UPS employees were required to report to a security screening station known as the guard shack. After entering the security screening station, employees entered a line and were screened one-by-one. During the security screening, UPS employees were required to submit any bags in their possession to be searched, remove any metal objects, and then submit to a metal detector search. If the metal detector's alarm sounded, the employees were required to undergo an additional security screening by the security guard located at the guard shack. During the secondary security screening, the UPS employee was subject to a personal search to detect and identify any unauthorized items in the possession of the UPS employee. If the employee passed the screening, the employee was then allowed to walk from the security screening station to the time clock to clock-in for the day.

34. The amount of time it takes to wait in line and undergo the security screening is approximately 5 minutes to 10 minutes on average. This amount of time could be longer depending upon the number of other UPS employees in line for the security screening. The security screenings occurred each day at each UPS warehouse in Connecticut and no UPS employee was permitted to work without first passing the security screening.

35. In fact, given that long lines could form, UPS employees needed to show up well before the start of their shifts to have enough time to wait in line and complete the screening and then clock-in by the start of their scheduled shifts. The Plaintiffs and Class Members arrived at the UPS warehouses at times 15 to 30 minutes before the start of their shifts so that they could

have enough time to complete the mandatory on-site screening and then clock-in by the start of their scheduled shifts.

36. After completing the security screening, Plaintiffs and the Class Members were required to walk from the screening station to their workstation. It took approximately 3 to 5 minutes to walk from the screening station to the workstation.

37. At the workstation, Plaintiffs and the Class Members were required to clock in on a computer system known as the DIAD. It normally took approximately 2 to 4 minutes to log into the DIAD and clock-in.

38. Similarly, at the end of their shifts, UPS employees were required to clock-out on the DIAD. It took approximately 2 to 4 minutes to log into the DIAD and clock out.

39. UPS employees were then required to walk to the screening station and pass an exit screening before leaving the facility. This walk took approximately 3 to 5 minutes.

40. The exit screening is the same as the pre-shift security screening process, just performed after the UPS employees clock out. However, given the number of employees who normally ended their shifts at the same time, it took approximately 7 to 15 minutes to wait in line and complete the exit security screening. This amount of time could be longer depending upon the number of other UPS employees in line. This exit security screening occurs each day at each UPS warehouse in Connecticut.

### C. UPS's mandatory security screenings are compensable under Connecticut law. UPS is liable for failing to pay for this time.

41. The pre-shift and post-shift security screenings should have been paid by UPS because this work is compensable under Connecticut law. *Del Rio v. Amazon.com Servs.*, 354 Conn. 151, 349 A.3d 570, 585 (2026).

42. In *Del Rio*, the Connecticut Supreme Court stated that the term "Hours worked" includes the following categories of activities:

> The plain language of § 31-76b (2) (A) requires that, with the exception of meal breaks, employers compensate their employees for four categories of time: (1) when the employer requires the employee to be on the employer's premises, (2) when the employee is on duty, (3) when the employer requires the employee to be at the prescribed work place, and (4) when the employee is employed or permitted to work, whether or not required to do so. With respect to all four categories, "hours worked" includes all time spent by the employee waiting on the premises, even if "no work is provided by the employer." General Statutes § 31-76b (2) (A).

*Id*. at 580.

43. In *Del Rio*, Amazon required its hourly paid employees to complete security screenings after clocking-out, just like UPS does in the present case. The Connecticut Supreme Court found that Amazon's exit screenings constitute compensable time that must be paid by Amazon.

> It is undisputed for present purposes that Amazon required the Plaintiffs to undergo mandatory security screenings on the premises of its fulfillment centers before permitting them to leave the buildings at the conclusion of their shifts. Because Amazon required the Plaintiffs to remain on its premises during the mandatory security screenings, we conclude that this time was compensable under Connecticut's wage laws on the ground that it plainly and unambiguously constitutes "hours worked," as defined by § 31-76b (2) (A).

*Id*. at 580-81.

44. The Connecticut Supreme Court then concluded that "the time an employer requires its employees to spend undergoing mandatory security screenings on the employer's premises is compensable as 'hours worked' under the plain and unambiguous language of § 31-76b(2)(A)." *Id*. at 585.

45. For the same reasons, the pre-shift and post-shift security screenings completed by the Plaintiffs and Class Members are compensable and UPS is liable for not paying for this activity.

46. In the present case, the security screenings are compensable because the security screenings were required by UPS and were not optional. The Plaintiffs and the Class Members were required to comply with UPS's instructions and were required to complete both the entrance and exit security screenings each shift under the threat of discipline, including possible termination.

47. These security screenings were also undertaken on UPS's premises and the Plaintiffs and the Class Members were confined to UPS's premises while they waited for the security screenings and during the security screenings.

48. The security screenings were also controlled by UPS. Indeed, the Plaintiffs and the Class Members were required to follow UPS's instructions while they waited for the security screenings and during the security screenings.

49. During the security screenings, UPS compelled Plaintiffs and the Class Members to perform specific tasks, such as lining up, walking through the metal detectors, submitting to a wand search, and handing over their bags and other personal items to be searched.

50. During the screening, UPS directed, commanded, and restrained its employees, prevented them from using that time effectively for their own purposes; and Plaintiffs and the Class Members remained subject to UPS's control during the security screenings.

51. The security screenings were undertaken primarily for the benefit of UPS. The Plaintiffs and Class Members derived zero benefit from being forced to undergo the security screenings prior to the start of their scheduled shifts and after the end of their scheduled shifts without pay.

52. As a result of UPS's conduct, Plaintiffs and the Class Members are owed significant unpaid wages and penalties.

53. **The time spent walking to and from the time clocks is compensable.**

54. After completing the pre-shift security screening, Plaintiffs and the Class Members were required to walk to the time clocks located inside the warehouses to clock-in for the day.

55. Similarly, after clocking-out at the end of each shift, the Plaintiffs and the Class Members were required to walk to the location of the exit screening, wait in line, and then complete the exit security screening.

56. The time spent walking to the time clocks and walking from the time clocks is compensable under Connecticut law. For instance, such time was required by UPS and was conducted on the premises of UPS.

57. The time spent walking to the time clocks and walking from the time clocks is also compensable pursuant to the continuous workday rule. Under the continuous workday rule, once the first compensable activity is performed, all subsequent activities performed are compensable regardless of the amount of time each specific individual activity takes. *See* 29 C.F.R. § 790.6(a). The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id*. Specifically, section 790.6(a) states as follows:

> Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.

*Id*.

58. Therefore, the Plaintiffs and Class Members are entitled to compensation from the time they first arrived at the screening station in the morning to the time they clocked-in for the day. Similarly, the Plaintiffs and Class Members are entitled to compensation from the time they clocked-out at the end of the day to the time they completed the exit screening.

59. Plaintiffs and the Class Members were non-exempt employees.

60. Plaintiffs and the Class Members were paid on an hourly rate basis.

61. When they worked more than forty hours in a workweek, they were entitled to overtime pay.

62. Due to the substantial pre-shift work and post-shift work, Plaintiffs and the Class Members were not paid for all time worked each day and are owed significant unpaid wages.

63. Although UPS employs electronic clocking-in technology, this technology was not accessible to Plaintiffs and Class Members before pre-shift screenings or after the post-shift screening.

64. UPS's method of paying Plaintiffs and Class Members in violation of Connecticut law was not based on a good faith and reasonable belief that their conduct complied with the law. UPS knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## CLASS ACTION ALLEGATIONS

65. Plaintiffs bring this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes, which are comprised of the following individuals:

> **<u>Statutory Class Members</u>: All current and former hourly paid employees of UPS who underwent a security screening during at least one week in Connecticut in the two-year period before the filing of the Complaint until final resolution of this action.**
>
> **<u>Common Law Class Members</u>: All current and former hourly paid employees of UPS who underwent a security screening and worked less than 40 hours in at least one week in Connecticut in the six-year period prior to the filing of the Complaint until final resolution of this action.**

66. <u>Numerosity</u>: The number of members in the Classes is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the Classes before this Court impracticable. Likewise, joining each

individual member of the Classes as a Plaintiff in this action is impracticable. Furthermore, the identity of the members of each Class will be determined from UPS's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class Members and UPS.

67. Typicality: Plaintiffs' claims are typical of the Class Members' claims because like the Class Members, Plaintiffs were subject to UPS's uniform policies and practices and were compensated in the same manner as others in the Classes. UPS failed to pay the Class Members for all hours they worked. Additionally, members of the Classes worked substantially more than forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiffs and the Class Members have been uncompensated and/or under-compensated in weeks when they worked less than 40 hours and in weeks when they worked more than 40 hours as a result of UPS's common policies and practices which failed to comply with Connecticut law. As such, Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and the members of the Classes sustained damages arising out of and caused by UPS's common course of conduct in violation of law as alleged herein.

68. Adequacy: Plaintiffs are representative parties who will fairly and adequately protect the interests of the Class Members because it is in their interests to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Connecticut law. Plaintiffs have retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiffs do not have any interest which may be contrary to or in conflict with the claims of the Class Members they seek to represent.

69. Commonality: Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

a. Whether Plaintiffs and the Class Members are entitled to compensation for the time spent in the security screenings;

b. The amount of time spent in the security screenings;

c. Whether Plaintiffs and the Class Members worked more than forty (40) hours in a workweek;

d. Whether UPS failed to pay Plaintiffs and the Class Members wages for all hours worked, including overtime hours; and

e. The proper measure of damages sustained by Plaintiffs and the Class Members.

70. Superiority: A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Classes could afford to pursue individual litigation against a company the size of UPS, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for UPS.

71. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of

the Classes is readily identifiable from UPS's records.

72. This type of case is well-suited for class action treatment because: (1) UPS's practices, policies, and/or procedures were uniform; (2) the burden is on UPS to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on UPS to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the Connecticut claims detailed herein because of the common nucleus of operative facts centered on the continued failure of UPS to pay Plaintiffs and the Class Members per applicable Connecticut laws.

## CAUSES OF ACTION

### UNPAID OVERTIME - FIRST CLAIM FOR RELIEF
### (On behalf of Plaintiff Rinaldi and the Statutory Class Members)

73. All previous paragraphs are incorporated as though fully set forth herein.

74. Connecticut has a statutory cause of action for overtime wages. "If any employee is paid by his or her employer less than the ... overtime wage to which he or she is entitled under sections 31-58, 31-59 and 31-60 or by virtue of a minimum fair wage order he or she shall recover, in a civil action, (A) twice the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court or (B) if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law, the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court." C.G.S. Sec. 31-68(a)(1) (entitled "Collection of minimum or overtime wage. Class action certifications. Collection of wages for employee whose whereabouts are unknown.").

75. At all material times, Plaintiffs and the Statutory Class Members were covered employees entitled to the above-described Connecticut protections.

76. Plaintiffs and the Statutory Class Members are not exempt from overtime wages.

77. UPS has violated Connecticut law by failing to pay Plaintiffs and the Statutory Class Members for all time associated with the mandatory security screenings and walking time.

**MINIMUM WAGE VIOLATIONS - SECOND CLAIM FOR RELIEF**
**(On behalf of Plaintiff Rinaldi and the Statutory Class Members)**

78. All previous paragraphs are incorporated as though fully set forth herein.

79. Connecticut has a statutory cause of action for minimum wages. "If any employee is paid by his or her employer less than the minimum fair wage...to which he or she is entitled under sections 31-58, 31-59 and 31-60 or by virtue of a minimum fair wage order he or she shall recover, in a civil action, (A) twice the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court or (B) if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law, the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court." C.G.S. Sec. 31-68(a)(1) (entitled "Collection of minimum or overtime wage. Class action certifications. Collection of wages for employee whose whereabouts are unknown.").

80. At all material times, Plaintiffs and the Statutory Class Members were covered employees entitled to the above-described Connecticut protections.

81. Plaintiffs and the Statutory Class Members are not exempt from minimum wages.

82. Plaintiffs and the Statutory Class Members were not paid any wages for the time spent prior to clocking in or after clocking out despite performing work as a result of the security screenings.

83. UPS has violated Connecticut law by failing to pay Plaintiffs and the Statutory Class Members for all time associated with the mandatory security screenings and walking time.

**UNPAID WAGES - THIRD CLAIM FOR RELIEF**
**(On behalf of Plaintiff Rinaldi and the Statutory Class Members)**

84. All previous paragraphs are incorporated as though fully set forth herein.

85. Connecticut has a statutory cause of action for wages generally, i.e., other than minimum or overtime wages. "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court." C.G.S. Sec. 31-72 (entitled "Civil action to collect wage claim, fringe benefit claim or arbitration award.").

86. At all material times, Plaintiffs and the Statutory Class Members were covered employees entitled to the above-described protections.

87. Plaintiffs and the Statutory Class Members are not exempt employees.

88. UPS has violated Connecticut law by failing to pay Plaintiffs and the Statutory Class Members for all time associated with the mandatory security screenings and walking time.

**UNJUST ENRICHMENT - FOURTH CLAIM FOR RELIEF**
**(On behalf of Plaintiffs and the Common Law Class Members)**

89. All previous paragraphs are incorporated as though fully set forth herein.

90. UPS implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo pre-shift and post-shift security screenings. These screenings were imposed by UPS as a requirement to work each shift. These screenings were conducted on the premises of UPS, were required by UPS, and were necessary for each employee to perform his/her work for UPS.

91. UPS did not pay employees for the time they spent undergoing the screenings.

92. UPS did not pay employees for the time spent walking to and from the time clocks before and after the screenings.

93. Plaintiffs and the Common Law Class Members provided and furnished UPS their valuable time and services by submitting to the required screenings and by walking to and from the time clocks.

94. UPS benefitted from the time Plaintiffs and the Common Law Class Members spent in the screenings and walking to and from the time clocks.

95. It would be unjust for UPS to retain the benefit of Plaintiffs' and the Common Law Class Members' time spent in UPS's required screenings, and the time spent walking to and from the time clocks without paying for such time.

96. By providing unpaid labor, Plaintiffs and the Common Law Class Members conveyed a benefit to UPS which UPS knowingly received.

97. Instead of incurring significant business, operating, and labor costs by paying for these services, UPS knowingly shifted that responsibility, risk, and considerable cost to Plaintiffs and the Common Law Class Members. As a result, UPS was unjustly enriched because those shifted costs were borne and absorbed by Plaintiffs and the Common Law Class Members.

98. UPS is not entitled to this benefit without payment to Plaintiffs and the Common Law Class Members, and retention of such benefits, without payment, would be unjust to Plaintiffs and the Common Law Class Members.

99. By the course of conduct set forth above, UPS is liable to Plaintiffs and the Common Law Class Members.

100. Due to UPS's actions, Plaintiffs and the Common Law Class Members are entitled to recover all of their unpaid regular (but not overtime) compensation, and such other legal and equitable relief stemming from UPS's conduct.

## JURY DEMAND

101. Plaintiffs hereby demand a trial by jury on all issues.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and on behalf of all the Class Members, pray that the Court:

a. Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

b. Appoint Plaintiffs as Representatives of the Classes, and appoint their counsel as Class Counsel;

c. Find and declare that UPS's policies and/or practices described above violate Connecticut law;

d. Award all unpaid wages, unpaid overtime, liquidated damages, penalties, interest, and/or restitution to be paid by UPS for the alleged causes of action;

e. Award costs, and expenses, including reasonable attorneys' fees and expert fees;

f. Award pre-judgment and post-judgment interest, as provided by law; and

g. Order such other and further legal and equitable relief the Court deems just, necessary, and proper.

Date: August 27, 2026

Respectfully submitted,

*/s/ Zachary L. Rubin*
Zachary L. Rubin, Esq. (ct30192)
ZLR Litigation, PLLC
456 Glenbrook Rd, Suite 11 #638
Stamford, CT 06906
(203) 212-9983
zach@zlrlitigation.com

And

Don J. Foty
(will apply for admission *pro hac vice*)
Texas State Bar No. 24050022
dfoty@fotylawgroup.com
FOTY LAW GROUP, P.C.
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

*Counsel for Plaintiffs and the Class Members*